Christopher J. Reichman  SBN 250485
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
Email: chrisr@prato-reichman.com

Attorney for Plaintiff
PAUL SAPAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAPAN,<br><br>　　　　Plaintiff,<br>　　vs.<br><br>TRAVELMASTERS, INC. d/b/a GOLDRUSH GETAWAYS, a California Corporation, JEREMY OESTREICH, an individual,<br><br>　　　　Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES, INCLUDING PUNITIVE DAMAGES, INTEREST AND ATTORNEY'S FEES, AND FOR INJUNCTIVE RELIEF**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br>**Trespass to Chattel**<br>**Unfair Business Practices** |

　　COMES NOW Plaintiff PAUL SAPAN (hereinafter referred to as "Plaintiff" or "SAPAN") who alleges as follows:

/ / /

/ / /

- 1 -
Complaint

## **JURISDICTIONAL ALLEGATIONS**

1. Plaintiff at all times herein mentioned was, a resident of the County of Los Angeles, but has recently moved to the County of Orange, State of California.

2. Defendant TRAVELMASTERS, INC. d/b/a GOLDRUSH GETAWAYS ("TMI") is, and at all times herein mentioned was, a California corporation, doing business in the County of Los Angeles, State of California using the fictitious business name Gold Rush Getaways.

3. Defendant JEREMY OESTREICH ("OESTREICH") is, and at all times herein mentioned was an individual doing business in the County of Los Angeles, State of California.

4. TMI and OESTREICH are collectively referred to herein as "Defendants".

5. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012). The state law claim herein arises out of a common nucleus of operative facts and is subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6. At all times herein mentioned each Defendant was the partner, agent and employee of each co-defendant herein and was at all times acting within the scope of such partnership, agency and employment and each Defendant ratified the conduct of each co-defendant herein.

## FACTUAL SUMMARY

7. Defendants made four (4) live calls to SAPAN's home phone number (310-444-1999) wherein they tried to pitch vacation packages and raffles on the following dates and times and using the following Caller ID ("CID") numbers and Caller ID name ("CNAM"):

- December 15, 2014 at 2:12 PM; CID 702-476-1300, "Elite Marketing"
- December 16, 2014 at 12:41PM; CID 702-476-1300, "Elite Marketing"
- December 16, 2014 at 3:35PM; CID 702-476-1300   [no CNAM]
- December 18, 2014 at1:51 PM; CID 702-476-1300   [no CNAM]

8. Mr. Sapan's home phone has been listed on the federal "Do Not Call" registry maintained by the Federal Trade Commission from at least January 1, 2015 to the present.

9. While each of the calls complained of above used the Caller ID number, they did not transmit correct Caller ID name information as required by law.  47 C.F.R. § 64.1601(e).

10. No defendant is named "Elite Marketing" nor does any Defendant have such a registered trade name.

## Call Details

11.   December 15, 2014 at 2:12 PM, Defendants called Mr. Sapan from CID 702-476-1300.

12.   Mr. Sapan did not answer this call, but the caller left a voice mail which stated that the call was from "Janella" who falsely claimed she was with "Global Gift Exchange" and left callback number of 855-476-6100.

13.   Defendants called Mr. Sapan from CID 702-476-1300 again on December 16, 2014 at 12:41PM from CID 702-476-1300.

14.   Since Mr. Sapan did not answer this call and no voicemail was left this time.

15.   On or about December 16, 2014 at 3:35PM, Defendants once again called Mr. Sapan from CID 702-476-1300.

16.   Mr. Sapan answered this call and was greeted by a "Michelle" who false claimed she was with "Global Exchange".

17.   "Michelle" then lied saying to Mr. Sapan that he had signed up for some drawing to win tickets to a sporting or concert event and that he was also getting a free vacation but that was fake too and she was really calling to try to sell Mr. Sapan a for-cash 'membership' to TMI's GoldRush Getaways where his membership fees would get him supposedly cheaper rates on time shares and travel promotions, neither of which he was interested in.

18. Mr. Sapan did not sign up for the supposed drawing and immediately hung up the phone believing this call to be a scam.

19. Defendants have not registered to run a lawful raffle or sweepstakes in this state by filing with the Office of the Attorney General, Registry of Charitable Trusts as required by Penal Code section 320.5 and related regulations as a raffle.

20. Defendants have not registered to run a lawful raffle or sweepstakes in this state by filing the appropriate tax documents with the California Franchise Tax Board as required by Penal Code section 320.5 and related tax laws and regulations.

21. Defendants then called Mr. Sapan one more time on December 18, 2014 at1:51 PM from CID 702-476-1300.

22. Since Mr. Sapan had already identified the calls by the CID as junk telemarketing and was otherwise engaged at the time he did not answer this call.

23. For the calls Mr. Sapan did not answer he alleges on information and belief that that these calls were made by Defendants for the same telemarketing purpose as in all the calls he answered, which all used the exact same CID number.

## Liability of TMI Corporate Entity

24. After getting fed up with Defendants' junk telemarketing calls, Mr. Sapan began to investigate the numbers that called him.

Complaint

25. Mr. Sapan did a Google search of 855-476-6100, which was the call back number left in the voice mail.

26. Mr. Sapan quickly discovered that the 855-476-6100 call back number as well as the CID 702-476-1300 was on a website job posting for TMI under their registered fictitious business name Goldrush Getaways.  See, http://www.pandahi.com/1027666336.html.

27. The 855-476-6100 and 702-476-1300 numbers were given for anyone who was interested in the position to contact Goldrush Getaways.

28. The job posting on http://www.pandahi.com/1027666336.html shows that GoldRush Getaways is in the business of a "Host Travel Agency" and that if a prospective employee joined with GoldRush Getaways there would be "Computer Dialers Provided At Your Station".

29. Finally the job posting asks an prospective employee "Can you get a firm commitment?", and " Do you like talking to people on the phone?"

30. Mr. Sapan then did a Google search for GoldRush Getaways and found the website, https://www.goldrushgetaways.com/.

31. Mr. Sapan found that the website https://www.goldrushgetaways.com/ was registered to Jeremy Oestreich and GoldRush Getaways by using the commonly available identification service "WhoIs" which shows InterNIC website registration.

32. The InterNIC website registration information also showed that GoldRush Getaways was located at 8350 Auburn Blvd, suite 200 Citrus Heights, CA 95610.

33. A search of the fictitious business name GoldRush Getaways with the Sacramento County online portal shows that GoldRush Getaways is owed by TMI, Ficitious Business Name File Number 2015-01925.

34. TMI is located at the same address as GoldRush Getaways, 8350 Auburn Blvd, suite 200 Citrus Heights CA 95610 according to their filings with the Secretary of State for California.

### Liability of OESTREICH

35. Mr. Sapan also investigated OESTREICH because in his research to GoldRush Getaways OESTREICH was listed as a registrant for the website https://www.goldrushgetaways.com/.

36. Mr. OESTREICH is listed with the Better Business Bureau as President and Chief Operating Officer of TMI.  See, http://www.bbb.org/northeast-california/business-reviews/travel-agencies-and-bureaus/travelmasters-inc-in-citrus-heights-ca-37000796/.

37. Mr. OESTREICH is also listed as the Chief Operation Officer for GoldRush Getaways on other public information aggregation sites.  See, e.g., http://www.zoominfo.com/p/jermey-Oestriech/1843864085.

38. The only other person listed as having any managerial control within TMI is Ms. Nikki Bruchet, who is listed as Chief Financial Officer, a position that usually has no authority over sales and operations staff.

39. Mr. OESTREICH is also listed the registrant for the GoldRush Getaways website (htttps://www.goldrushgetaways.com) with InterNIC indicating his control over all marketing, sales, and operations.

40. Plaintiff alleges on information and belief that OESTREICH made the violative calls, ordered them made, knew the calls described above were being made and did nothing, or was willfully and recklessly ignorant of the fact its agents or employees were making the calls described above.

## Actual Harm & Willful and Knowing Conduct

41. Mr. Sapan has been harmed by the junk calls complained of herein by the direct waste of his time during the calls themselves, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

42. Mr. Sapan has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time

in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

43. During each of Defendants' calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendants.

44. As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 1% of his monthly phone bill in December 2016since Defendants calls constituted 1% or more of the total calls to his phone during the heights of their junk calling campaign in those two months.

45. Plaintiff alleges on information and belief that Defendants made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services Plaintiff alleges on information and belief that Defendants made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations

## FIRST CAUSE OF ACTION
[TCPA Violation – Do Not Call List – For All 4 Calls]

1. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

2. Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

3. Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations".

4. At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

5. Defendants have called Plaintiff's residential telephone line for solicitation purposes during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line. These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

6. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the national do-not-call registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both. If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

## SECOND CAUSE OF ACTION
[Trespass to Chattel – For All 4 Calls]

7. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

8. The conduct by defendants complained of herein, namely illegally calling Plaintiff's phone, constitutes an electronic trespass to chattel.

9. At no time did Plaintiff consent to this trespass.

10. As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 1% of his monthly phone bill in December 2016since Defendants calls constituted 1% or more of the total calls to his phone in the two months at the height of their junk calling campaign.

11. In making the illegal calls described above, defendants were guilty of oppression and malice, in that defendants made said calls with the intent to vex,

injure, or annoy Plaintiff or with a willful and conscious disregard of Plaintiff's rights. Plaintiff therefore seeks an award of punitive damages.

## THIRD CAUSE OF ACTION
[Engaging in Unfair Business Practices – For All 20 Calls]

12. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

13. Because these telephone calls violate federal statutes, they are unlawful business practices within the meaning of section 17200 of the Business and Professions Code.

14. As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 1% of his monthly phone bill in December 2016since Defendants calls constituted 1% or more of the total calls to his phone in the two months at the height of their junk calling campaign.

15. Section 17203 of the Business and Professions Code entitles Plaintiff to an injunction enjoining defendants from engaging in unfair or unlawful business practices.

WHEREFORE Plaintiff prays for judgment against defendants, and each of them, as follows:

/ / /

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 C.F.R. §64.1200 (c) (2);
2. For an award of $1,500.00 for each such violation found to have been willful;

On the SECOND CAUSE OF ACTION:

3. For compensatory damages according to proof;
4. For punitive damages;

On the THIRD CAUSE OF ACTION:

5. For preliminary and permanent injunctions, enjoining Defendants, and each of them, from engaging in unfair or unlawful business practices pursuant to section 17203 of the Business and Professions Code;

On ALL CAUSES OF ACTION:

6. For attorney's fees pursuant to California Code of Civil Procedure § 1021.5.
7. For costs of suit herein incurred; and
8. For such further relief as the Court deems proper.

DATED: January 10, 2018                    **PRATO & REICHMAN, APC**

/s/Christopher J. Reichman, Esq.
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff
PAUL SAPAN